Devora L. Lindeman, Esq. (DL - 4631)
GREENWALD DOHERTY LLP
30 Ramland Road, Suite 201
Orangeburg, NY 10962
Telephone: (212) 644-1310
Facsimile: (845) 638-2707
dl@greenwaldllp.com

Justin B. Palmer (admitted *pro hac vice*)
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone:  (801) 578-6944
Facsimile:  (801) 578-6999
jbpalmer@stoel.com

Attorneys for Defendant
Huntsman Financial Consulting, LC

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CLAYTON ANDREWS,<br><br>    Plaintiff,<br><br> v.<br><br>SOTHEBY'S INTERNATIONAL REALTY, INC., and HUNTSMAN FINANCIAL CONSULTING, LC,<br><br>    Defendants. | Case No. 1:12-CV-8824-RA<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HUNTSMAN FINANCIAL CONSULTING, LC'S MOTION TO DISMISS** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  INTRODUCTION ................................................................................................ 1

II.  STANDARD ON RULE 12(b)(6) MOTION TO DISMISS ............................................ 3

III.  RELEVANT FACTUAL ALLEGATIONS ................................................................ 4

  A.  Andrews' Employment with SIRI ............................................................ 4

  B.  Huntsman Purchases Certain Assets Associated With SIRI's Real Estate
    Brokerage Operations in Wyoming and Idaho ........................................ 4

  C.  Huntsman and Andrews Enter into an Employment Agreement, Which the
    Parties Agree Shall Expire at the End of 2010 ...................................... 7

IV.  ARGUMENT ...................................................................................................... 9

  A.  Andrews' Claim for Severance Compensation Under the Purchase
    Agreement (Count VI) Should Be Dismissed .......................................... 9

    1.  Andrews Is Not Entitled to Severance Compensation Under the
      Express Terms of the Purchase Agreement .................................. 9

    2.  Andrews Cannot Avoid the Express Terms of the Purchase
      Agreement by Reliance on the Implied Covenant of Good Faith
      and Fair Dealing ...................................................................... 11

  B.  Andrews' Claim for Payment in Lieu of Notice Under the Employment
    Agreement (Count V) Should Be Dismissed .......................................... 13

  C.  Andrews' Claim for Bonus Compensation Under the Employment
    Agreement (Count II) Should Be Dismissed .......................................... 16

  D.  Andrews' Claim for Violation of the New York Labor Law (Count III)
    Should Be Dismissed .......................................................................... 18

  E.  Andrews' Implied-in-Fact Contract Claim (Count IV) Should Be
    Dismissed ......................................................................................... 20

  F.  Andrews' Promissory Estoppel, Unjust Enrichment, and Quantum Meruit
    Claims (Counts VII and VIII) Should Be Dismissed .............................. 21

  G.  Andrews' Claims for Attorneys' Fees Should Be Dismissed .................... 23

V.  CONCLUSION .................................................................................................. 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................3

*Atlas Realty of E. Meadow, Inc. v. Ostrofsky*,
   289 N.Y.S.2d 784 (N.Y. Sup. Ct. 1967) ...............................................................23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................3, 16, 17

*Berzin v. W.P. Carey & Co.*,
   740 N.Y.S.2d 63 (N.Y. App. Div. 2002) ...............................................................12

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005).....................................................................................3

*Duracell, Inc. v. Tri Star Fabricating, Inc.*,
   No. 89 Civ. 1492, 1990 U.S. Dist. LEXIS 303 (S.D.N.Y. Jan 10, 1990)...............23

*Fed. Ins. Co. v. Distinguished Props. Umbrella Managers Inc.*,
   721 F. Supp. 2d 293 (S.D.N.Y 2010).....................................................................20

*Firtell v. Update, Inc.*,
   851 N.Y.S.2d 57, 2007 N.Y. Misc. LEXIS 6426 (N.Y. Sup. Ct. 2007) ............12, 22

*Goldman v. White Plains Ctr. for Nursing Care, LLC*,
   896 N.E.2d 662 (N.Y. 2008)..............................................................................14, 15

*Harrison v. Toptani Law Offices*,
   No. 11 Civ. 6801 (LTS), 2012 U.S. Dist. LEXIS 28720 (S.D.N.Y. Mar. 2, 2012)...........21, 22

*Julien J. Studley, Inc. v. N.Y. News*,
   512 N.E.2d 300 (N.Y. 1987)....................................................................................20

*Lee v. Bankers Trust Co.*,
   166 F.3d 540 (2d Cir. 1999)......................................................................................3

*Leibowitz v. Cornell Univ.*,
   584 F.3d 487 (2d Cir. 2009).....................................................................................20

*Levion v. Société Générale*,
   822 F. Supp. 2d 390 (S.D.N.Y. 2011)......................................................................19

ii

*Malinowski v. Wall Street Source, Inc.*,
　　No. 09 Civ. 9592, 2012 U.S. Dist. LEXIS 11575 (S.D.N.Y. Jan. 31, 2012) ..........................19

*McKay v. Stewart*,
　　313 N.Y.S.2d 545 (N.Y. App. Div. 1970), *rev'd on other grounds*, 272 N.E.2d 887
　　(N.Y. 1971) ..........................................................................................................18

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
　　418 F.3d 168 (2d Cir. 2005) ...................................................................................21

*Moras v. Marco Polo Network, Inc.*,
　　No. 11 Civ. 2081, 2012 U.S. Dist. LEXIS 181110 (S.D.N.Y. Dec. 20, 2012) .......................24

*Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Xerox Corp.*,
　　792 N.Y.S.2d 772 (N.Y. Sup. Ct. 2004) ...................................................................11

*Pachter v. Bernard Hodes Grp., Inc.*,
　　891 N.E.2d 279 (N.Y. 2008) ...................................................................................24

*Peter Lampack Agency, Inc. v. Grimes*,
　　939 N.Y.S.2d 409 (N.Y. App. Div. 2012) ..................................................................20

*Sleepy's, LLC v. Select Comfort Wholesale Corp.*,
　　07-CV-4018, 2008 U.S. Dist. LEXIS 10727 (E.D.N.Y. Feb. 8, 2008) ...................................3

*Stissi v. Interstate & Ocean Transp. Co. of Phila.*,
　　814 F.2d 848 (2d Cir. 1987) ...................................................................................20

*Tel. Mgmt. Corp. v. Barclays Servs. Corp.*,
　　No. 11 Civ. 8570, 2013 U.S. Dist. LEXIS 48512 (S.D.N.Y. Mar. 28, 2013) .........................21

*Truelove v. Ne. Capital & Advisory, Inc.*,
　　738 N.E.2d 770 (N.Y. 2000) ...................................................................................19

*Verus Pharms., Inc. v. AstraZeneca AB*,
　　No. 09 Civ. 5660, 2010 U.S. Dist. LEXIS 83571 (S.D.N.Y. Aug. 16, 2010) .........................22

*Verzani v. Costco Wholesale Corp.*,
　　641 F. Supp. 2d 291 (S.D.N.Y. 2009) .......................................................................3

*Vill. on Canon v. Bankers Trust Co.*,
　　920 F. Supp. 520 (S.D.N.Y. 1996) .....................................................................11, 12

*Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*,
　　No. 10-CV-1762, 2013 U.S. Dist. LEXIS 62007 (E.D.N.Y. Apr. 30, 2013) .........................23

*Wood v. Long Island Pipe Supply, Inc.*,
　　919 N.Y.S.2d 183 (N.Y. App. Div. 2011) ..............................................................14, 15

**Statutes**

New York Labor Law ........................................................................................18, 19, 24

New York Labor Law § 190(1) ...........................................................................19

New York Labor Law § 191 ................................................................................19

New York Labor Law § 193 ................................................................................19, 18

New York Labor Law § 198 ................................................................................18, 24, 19

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................... passim

Fed. R. Civ. P. 56 ...............................................................................................4, 5, 8

## I.   INTRODUCTION

On May 7, 2010, Defendant Huntsman Financial Consulting, LC ("Huntsman") acquired certain assets associated with the residential real estate brokerage operations of Defendant Sotheby's International Realty, Inc. ("SIRI") in Wyoming and Idaho pursuant to an Asset Purchase and Sale Agreement (the "Purchase Agreement").  After the closing, nearly all of the former employees of SIRI, including Plaintiff Clayton Andrews ("Andrews"), accepted employment with Huntsman.

Pursuant to the Purchase Agreement, Huntsman did not assume the employment or severance obligations of SIRI to its former employees, with one exception.  Specifically, Huntsman agreed that if it conducted a Severance Eligible Event (as defined in the Purchase Agreement) impacting a former employee of SIRI *within one year following the closing date*, then Huntsman would pay to the impacted employee certain severance benefits specifically identified in the Purchase Agreement.

Shortly before the acquisition, Huntsman negotiated a separate employment agreement with Andrews.  Huntsman agreed to abide by certain of the elements of Andrews' previous employment agreement with SIRI, as set forth in an October 28, 2003 offer letter from SIRI to Andrews (the "Offer Letter"), which included a provision requiring the parties to give each other six months' notice before terminating the employment relationship (the "Employment Agreement").  Importantly, the parties expressly agreed that the Employment Agreement would expire at the end of 2010.

On June 6, 2011, *more than one year following the closing date of the Purchase Agreement and after the Employment Agreement had expired*, Andrews transitioned into the role of an independent sales agent and member of Huntsman's newly formed board of advisors.

He thereafter served in this role for several months until he voluntarily terminated his relationship with Huntsman.

In the Second Amended Complaint, Andrews argues that Huntsman owes him (1) severance compensation under the Purchase Agreement, (2) the equivalent of six months of his base salary under the Employment Agreement because, according to Andrews, Huntsman failed to give him six months' notice before terminating his employment, and (3) bonus compensation under the Employment Agreement.

It is black-letter law that the plaintiff carries the burden to plead facts sufficient to state a claim.  When the plaintiff fails to do so, dismissal serves to eliminate actions that are fatally flawed and destined to fail, thereby sparing the litigants the burden of unnecessary pretrial and trial activity.  This is such a case.  As discussed below, Andrews is not entitled to severance or bonus compensation under the ***express terms*** of the Purchase Agreement or the Employment Agreement.   Realizing this, Andrews relies on quasi-contractual theories – implied-in-fact contract, implied covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, and quantum meruit – to support his claims.  However, even a cursory review of the Second Amended Complaint shows that – even at the pleading stage – these claims fail as a matter of law for several independent reasons.

Accordingly, Huntsman's Motion to Dismiss should be granted and Andrews' claims against Huntsman should be dismissed with prejudice.[1]  Further, Andrews should not be allowed to amend his pleading because he has already amended twice and any further amendment would be futile for the reasons discussed below.

---

[1] The only claim in the Second Amended Complaint that Huntsman does not seek to dismiss is (Count I), because this claim is not asserted against Huntsman.

## II.      STANDARD ON RULE 12(b)(6) MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) permits both partial and complete dismissal for

"'failure to state a claim upon which relief can be granted.'"  *Sleepy's, LLC v. Select Comfort*

*Wholesale Corp.*, 07-CV-4018, 2008 U.S. Dist. LEXIS 10727, *3 (E.D.N.Y. Feb. 8, 2008)

(quoting Rule 12(b)(6)).  Although on a Rule 12(b)(6) motion to dismiss the Court generally may

not consider matters outside the pleadings, it may consider documents attached to pleadings,

documents referenced in pleadings, or documents that are integral to the pleadings.  *See Broder*

*v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (noting that where plaintiff has

"relied on the terms . . . of a document in drafting the complaint," the document is "integral to

the complaint," and may be considered in deciding motion to dismiss, even if not formally

incorporated by reference (alteration, internal quotation marks, and citation omitted)); *Verzani v.*

*Costco Wholesale Corp.*, 641 F. Supp. 2d 291, 297-98 (S.D.N.Y. 2009) (noting that "where the

claim is for breach of contract, the complaint is deemed to incorporate the contract by reference

because the contract is integral to the plaintiff's claim").  The Court must "tak[e] all factual

allegations as true and [must] construe all reasonable inferences in the plaintiff's favor."  *Lee v.*

*Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999).  However, to survive a Rule 12(b)(6)

motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plausibility "is not akin to a probability requirement"; rather, plausibility requires "more than a

sheer possibility that a defendant has acted unlawfully."  *Id.*

### III.      RELEVANT FACTUAL ALLEGATIONS

**A.      Andrews' Employment with SIRI.**

1.      In or about October 2003, Andrews was offered, and thereafter accepted, the position of "Senior Vice President of the Jackson Hole Brokerage Office of [SIRI] located in Jackson, Teton County, Wyoming and Teton County, Idaho." (Second Amended Compl. ¶ 7.)[2]

2.      On October 28, 2003, SIRI sent Andrews an offer letter, which set forth certain of the terms of Andrews' employment (the "Offer Letter"). (*See* Offer Letter at 1, attached to the Huntsman Affidavit as Exhibit B.)[3]

3.      Specifically, the Offer Letter set forth the terms of Andrews' compensation, including annual base salary and incentive bonus formula. (*See id*. at 1.)

4.      The Offer Letter stated that both Andrews and SIRI would agree to provide each other with six months' notice prior to the "departure of [Andrews'] employment." (*Id*. at 2.)

5.      The Offer Letter also stated that "no individual is authorized to agree to any other employment arrangement except by a written document." (*Id*.)

6.      Finally, the Offer Letter stated that Andrews was an employee-at-will whose employment could be terminated "at any time for any reason." (*Id*.)

**B.      Huntsman Purchases Certain Assets Associated With SIRI's Real Estate Brokerage Operations in Wyoming and Idaho.**

7.      On May 7, 2010, Huntsman acquired certain assets associated with SIRI's

---

[2] A copy of the Second Amended Complaint (and the exhibits thereto) is attached to the Affidavit of David Huntsman (the "Huntsman Affidavit"), filed concurrently herewith, as Exhibit A.

[3] The Court may consider the Offer Letter without converting Huntsman's Motion to Dismiss into a Rule 56 summary judgment motion because it is referenced in, and attached as an exhibit to, the Second Amended Complaint. (*See* Second Am. Compl, Exhibit A.)

residential real estate brokerage operations conducted in Jackson Hole, Wyoming; Driggs, Idaho; and Sun Valley, Idaho, pursuant to the Purchase Agreement.  (*See* Second Am. Compl. ¶ 15; *see also* Purchase Agreement at 1 (a redacted copy of the Purchase Agreement is attached to the Huntsman Affidavit as Exhibit C).)[4]

8.      The "Closing Date" of the Purchase Agreement was "12:01am Eastern Time on May 7, 2010."  (Purchase Agreement § 6.)

9.      With regard to "Pendings" – *i.e.,* contracts for the sale or lease of real property that had been fully executed prior to the Closing Date but had not closed as of the Closing Date – Section 2 of the Purchase Agreement stated that ***all of the proceeds and all of the profits from the Pendings would be retained by SIRI and excluded by the transactions contemplated by the Purchase Agreement***:

> Excluded Assets.   The following assets of Seller shall be retained by Seller and excluded from the transactions contemplated hereby (the "Excluded Assets"):
>
> a.      all of Seller's rights to commissions, referral and other fees, and other compensation payable to Seller after the Closing, in the manner set forth in the TSA (as defined below), ***in respect of the sale or lease of any real property for which a contract of sale or lease has been fully executed prior to the Closing***; and which are set forth on Schedule 2(a) (the "Excluded Commissions");
>
> b.      any transaction underlying or giving rise to Excluded Commissions (the "Excluded Transactions")[.]

(Emphasis added.)

9.      Section 4 of the Purchase Agreement states that Huntsman shall not be

---

[4]  The Court may consider the Purchase Agreement without converting Huntsman's Motion to Dismiss into a Rule 56 summary judgment motion because it is referenced in and integral to the Second Amended Complaint.  (*See* Second Am. Compl. ¶ 15.)

responsible for any liabilities arising out of the Pendings:

> Excluded Liabilities. Without in any way expanding the specificity and limitation of Section 3, **Buyer shall not assume or be responsible for, and Seller shall retain and be responsible for, the following liabilities or obligations** (the "Excluded Liabilities"):
>
> a.  Nonenumerated Liabilities. **Any liability** or obligation of Seller of any kind known or unknown, contingent or otherwise, not (i) **specifically identified as an Assumed Liability in Section 3**; (ii) resulting from any specific covenant, agreement or indemnity of Buyer in this Agreement; or (iii) specifically assumed in other agreements and instruments executed and delivered by Buyer in connection with this Agreement.

(Emphases added.)

10.     Pursuant to Section 7(b) of the Purchase Agreement, on the Closing Date (May 7, 2010), Huntsman offered employment to each and every employee of the business, and SIRI transferred the employment of each employee who accepted such an employment offer from Huntsman.

11.     Huntsman did not agree to accept any obligations SIRI had to its former employees regarding employment or severance,[5] except certain severance payments specifically described in Section 7(f) of the Purchase Agreement.  Section 7(f) provides as follows:

> In the event Buyer conducts a **Severance Eligible Event (as defined below)** impacting or affecting former employees of Seller ("Impacted Employees") **within one year following the Closing Date**, then, Buyer will ensure payment to the Impacted Employee of monetary Severance Benefits equal to those which the Employee would have received under the Realogy Severance Plan for Non-Officers as set forth on Schedule 7(f).

---

[5] Section 4(h) of the Purchase Agreement states that Huntsman shall not be responsible for "any liability under any employment, severance, termination, or retention agreement, in each case arising out of [SIRI's] operation of the Business prior to the Closing."

> For purposes of this Section 7(f), a "Severance Eligible Event"
> means an Employee's involuntary termination for one of the
> following reasons: (a) reduction in the Buyer's workforce; or (b)
> elimination or discontinuance of the Employee's job or position,
> including pursuant to an outsourcing arrangement, if the Employee
> is not offered an equal position with the Buyer or with a third
> party.

(Emphases added.)

12.   Schedule 7(f) of the Purchase Agreement provides details concerning the amount

of severance former employees of SIRI would be entitled to receive ***if Huntsman conducted a***

***Severance Eligible Event impacting that employee within one year following the Closing Date***.

Schedule 7(f) provides that if Huntsman conducted a Severance Eligible Event impacting

Andrews within one year following the Closing Date, then Andrews would be entitled to receive

severance compensation totaling $259,781.51.

**C.   Huntsman and Andrews Enter into an Employment Agreement, Which the Parties
Agree Shall Expire at the End of 2010.**

13.   In April 2010, approximately one month before the Closing Date, Huntsman and

Andrews negotiated the terms of the Employment Agreement.

14.   Specifically, on April 16, 2010, Andrews emailed to David Huntsman, one of the

managers of Huntsman, a copy of the Offer Letter from SIRI, and stated, in part:

> I have attached a copy of my original employment contract with
> SIR.  I am happy to finalize the agreement with you when we meet
> next week, but I would like written assurance prior to my meeting
> with the former partners on Monday that my agreement with the
> new entity will be comparable to or better than my existing
> contract, including, but not limited to salary (currently $200k),
> benefits (medical, 401k, vacation), bonus (9% + 20% pre-royalty
> and allocations), and the non-compete (6 months).

(Email between Andrews and David Huntsman (Apr. 16-19, 2010), attached to the Huntsman

Affidavit as Exhibit D.)[6]

15.     David Huntsman responded to Andrews' email as follows:

> Thank you Clayton, I appreciate your availability earlier this morning to discuss this matter in more detail over the phone. I want to confirm to you in writing to add to my verbal assurance that upon closing of this transaction we will honor and abide by the conditions and elements of your existing employment contract with SIR[I] *going forward through the end of 2010*.

(*Id*. (emphasis added).)

16.     Andrews responded as follows:

> Thanks for the email and as I stated on our call I am comfortable with your verbal and written assurance for the time being *until such time as we are able to discuss the specifics of my role after 2010*.

(*Id*. (emphasis added).)

17.     Andrews asserts that Huntsman's agreement to abide by the elements of the Offer Letter through the end of 2010 constitutes an enforceable agreement between the parties. (*See* Second Am. Compl., Count II.) Huntsman does not dispute that the parties agreed to extend certain terms of the Offer Letter through the end of 2010, but denies that it breached any agreement with Andrews in any respect.

18.     Thereafter, Andrews performed essentially the same services for Huntsman that he previously performed for SIRI in connection with the business. (*See id*. ¶¶ 10, 17, 18.)

19.     On "June 6, 2011," more than one year following the Closing Date of the Purchase Agreement and after the Employment Agreement had expired by its express terms, Andrews transitioned into the role of an independent sales agent and member of Huntsman's

---

[6] The Court may consider the email correspondence without converting Huntsman's Motion to Dismiss into a Rule 56 summary judgment motion because it is referenced in and integral to the Second Amended Complaint. (*See* Second Am. Compl. ¶¶ 13, 14.)

board of advisors.  (*Id.* ¶ 20.)

## IV.    ARGUMENT

**A.    Andrews' Claim for Severance Compensation Under the Purchase Agreement (Count VI) Should Be Dismissed.**

Andrews' claim for severance compensation is based on the Purchase Agreement – he does not allege that he is entitled to severance compensation from Huntsman under any other contract or benefit plan.  Although the Second Amended Complaint is less than clear, Andrews apparently asserts that Huntsman breached (1) the express terms of the Purchase Agreement and (2) the implied covenant of good faith and fair dealing in the Purchase Agreement by failing to pay him severance compensation upon the termination of his employment in June 2011 (Andrews did not leave Huntsman in June 2011; instead, he transitioned into the role of an independent sales agent).  Even giving Andrews the full benefit of Rule 12(b)(6), each of these claims fails as a matter of law.[7]

**1.    Andrews Is Not Entitled to Severance Compensation Under the Express Terms of the Purchase Agreement.**

As concerns severance obligations to former employees of SIRI (including Andrews), the Purchase Agreement provides that Huntsman did not accept any such obligations, except certain severance payments specifically described in Section 7(f), which provides as follows:

> In the event Buyer conducts a ***Severance Eligible Event (as defined below)*** impacting or affecting former employees of Seller ("Impacted Employees") ***within one year following the Closing Date***, then, Buyer will ensure payment to the Impacted Employee of monetary Severance Benefits equal to those which the Employee would have received under the Realogy Severance Plan

---

[7] Huntsman does not concede that Andrews is a third-party beneficiary of the Purchase Agreement or that he has standing to enforce the Purchase Agreement.  However, even if Andrews is considered to be a third-party beneficiary of the Purchase Agreement, his claims thereunder fail as a matter of law for the reasons set forth herein.

for Non-Officers as set forth on Schedule 7(f).

For purposes of this Section 7(f), a "Severance Eligible Event" means an Employee's involuntary termination for one of the following reasons: (a) reduction in the Buyer's workforce; or (b) elimination or discontinuance of the Employee's job or position, including pursuant to an outsourcing arrangement, if the Employee is not offered an equal position with the Buyer or with a third party.

(Emphases added.)

Thus Huntsman would only be liable to Andrews for severance compensation under the Purchase Agreement if it had conducted a Severance Eligible Event impacting him within one year following the Closing Date – *i.e.,* before May 7, 2011.  No such event happened in the relevant time frame and ***Andrews concedes that no such event occurred***.  Indeed, the Second Amended Complaint alleges that Andrews' employment with Huntsman was terminated on "June 6, 2011" – after the expiration of the one-year period.  (Second Am. Compl. ¶ 20.)

Further, even if the termination of Andrews' employment had occurred on or before May 7, 2011 (which it did not), Andrews does not allege that the termination of his employment constituted a Severance Eligible Event within the meaning of the Purchase Agreement.  As noted above, a Severance Eligible Event means an employee's involuntary termination for one of the following reasons:  (a) reduction in Huntsman's workforce; or (b) elimination or discontinuance of the employee's job or position, including pursuant to an outsourcing arrangement, if the employee is not offered an equal position with Huntsman or with a third party.  Conspicuously absent from Andrews' Second Amended Complaint is any factual allegation from which the Court could infer that Andrews' employment was terminated for one of these reasons.  Andrews do not even allege in a conclusory fashion that he was terminated for one of these reasons.

In sum, Andrews' claim that Huntsman breached the Purchase Agreement by failing to

pay him severance compensation fails because Huntsman did not conduct a Severance Eligible Event within one year following the Closing Date.  This undisputed fact is established by the Second Amended Complaint itself.   Thus Andrews has no entitlement to severance compensation under the express terms of the Purchase Agreement as a matter of law, and any claim to the contrary must be dismissed.

### 2.   Andrews Cannot Avoid the Express Terms of the Purchase Agreement by Reliance on the Implied Covenant of Good Faith and Fair Dealing.

Realizing that he is not entitled to severance compensation under the express terms of the Purchase Agreement, Andrews asserts in Count VI of the Second Amended Complaint that Huntsman breached the "duty of good faith and fair dealing in the [A]greement," because although Huntsman did not conduct a Severance Eligible Event within one year following the Closing Date, it made the decision to do so "prior to the expiration of the one year period." (Second Am. Compl. ¶ 53.)  Such a claim is not viable under New York law.

It is well-established that the "[t]he implied covenant . . . does not create any new contractual rights, nor does it provide an independent basis for recovery." *Vill. on Canon v. Bankers Trust Co.*, 920 F. Supp. 520, 534 (S.D.N.Y. 1996).  Further, the implied covenant cannot be used "to nullify other express terms of a contract." *Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Xerox Corp.*, 792 N.Y.S.2d 772, 773-74 (N.Y. Sup. Ct. 2004).  Thus, where, as here, a party complains of an act that is specifically authorized by the applicable contract – such as Huntsman's right under the Purchase Agreement to discharge former employees of SIRI more than one year after the Closing Date *without paying them any severance compensation* – there can be no breach of the implied covenant as a matter of law.  It would be a contradiction in terms to characterize an act contemplated by the applicable contract as a "bad faith" breach of that contract.

For these reasons, New York courts have dismissed implied covenant claims nearly identical to the one made by Andrews here.  For example, in *Firtell v. Update, Inc.*, 851 N.Y.S.2d 57 (table), 2007 N.Y. Misc. LEXIS 6426 (N.Y. Sup. Ct. 2007) (unpublished), an employee argued that her claim for breach of the implied covenant was viable because it alleged that her former employer ***expedited*** the termination of her employment in order to avoid paying her compensation that she would have been entitled to receive if the employment had continued. *See id*. at *5.  Andrews argues here that Huntsman ***delayed*** the termination of his employment in order to avoid paying him compensation he would have been entitled to receive if he had been discharged sooner.  In rejecting this argument, the court stated:

> New York . . . courts have generally [held] . . . that a claim which purports to allege that an employer breached the implied covenant by terminating an at-will employee – ***even specifically in order to avoid paying the employee additional compensation which would be owed if the employment had continued – fails to state a claim[.]***

*Id*. at *6 (emphasis added).

Other New York courts have reached similar conclusions.  *See Berzin v. W.P. Carey & Co.*, 740 N.Y.S.2d 63, 64 (N.Y. App. Div. 2002) ("While there is no dispute that, with the exception of certain severance benefits, plaintiff received everything he was entitled to under the express terms of the revised agreement, ***plaintiff claims that defendant's sole motivation in terminating him was to prevent the vesting of additional stock options and other compensation benefits, and that his termination therefore violated the [implied] covenant . . . .  Even if defendant were so motivated, plaintiff has no cause of action for breach of [the implied covenant]***." (emphasis added; citations omitted)); *Vill. on Canon*, 920 F. Supp. at 535 (holding that although plaintiff alleged that bank failed to negotiate for loan extension in good faith, such an allegation will not support claim for breach of implied covenant, because implied covenant

does not create any new contractual rights, and court cannot imply such right (the right to loan extension) into parties' contract).

Here, the Purchase Agreement does not provide that Huntsman will be liable for severance compensation if it *makes the decision* to conduct a Severance Eligible Event within one year following the Closing Date, and, as discussed above, the implied covenant cannot be used to create such an obligation out of thin air.  To the contrary, the Purchase Agreement provides that Huntsman will be liable for severance compensation if it "*conducts*" a Severance Eligible Event within one year of the Closing Date.  *And it is undisputed that Huntsman did not do so.*  Thus Andrews received all that he was entitled to receive under the Purchase Agreement.

In sum, it is undisputed that Andrews is not entitled to severance compensation under the express terms of the Purchase Agreement and, having admittedly received the fruits of the contract, Andrews' implied covenant claim (Count VI) must be dismissed as a matter of law.

**B.    Andrews' Claim for Payment in Lieu of Notice Under the Employment Agreement (Count V) Should Be Dismissed.**

Andrews next asserts that the Employment Agreement provided that Huntsman would give him six months' notice before terminating his employment, and that Huntsman failed to do so.  (*See* Second Am. Compl. ¶ 47.)  Thus Andrews asserts that Huntsman is liable for payment of his wages for the six-month notice period.  (*See id.*)  This claim is fatally flawed for one simple reason:  the Employment Agreement requiring such notice expired *by the express terms* of the parties' extension at the end of 2010.  (*See id.* ¶ 20.)  Thus, at the time Andrews' employment was allegedly terminated (June 2011), he was an employee-at-will whom Huntsman could terminate for any reason *without notice*.  Realizing this, Andrews again turns to quasi-contractual theories to support his claim.  However, Andrews' argument in Count V of the Second Amended Complaint that although the Employment Agreement expired in 2010, an

13

"implied contract . . . containing the same terms and conditions arose" because he continued to work for Huntsman, fails as a matter of law.

During efforts to resolve this matter, Andrews relied on New York case law that recognizes an "inference" that parties intend to renew an employment agreement for an additional year where the employee continues to work after expiration of an employment contract. However, such inference is inapplicable where, as here, the agreement specifies a term of the agreement. *See Wood v. Long Island Pipe Supply, Inc.*, 919 N.Y.S.2d 183, 185 (N.Y. App. Div. 2011); *see also Goldman v. White Plains Ctr. for Nursing Care, LLC*, 896 N.E.2d 662 (N.Y. 2008). The *Goldman* and *Wood* cases are instructive on this point.

The plaintiff in *Goldman* entered into a written employment agreement for a two-year period. The agreement provided that (1) the parties would "enter into good faith negotiations . . . with respect to renewal of th[e] [a]greement on mutually agreeable terms" nine months before the contract was due to expire; (2) the agreement could be terminated, inter alia, by either party giving notice at least six months prior to the end of the employment period; and (3) the agreement could not be changed, except by a writing signed by the plaintiff and the employer. 896 N.E.2d at 663 (emphasis added and first brackets in original). During the course of the two-year term, plaintiff and her employer did not discuss renewal of the agreement, and neither sent a notice of termination. *See id*. After the contract expired, the plaintiff continued to serve in the same capacity and received annual salary adjustments until the facilities in which she worked were purchased by the defendants. *See id*. The defendants, as assignees of plaintiff's employment contract, terminated plaintiff's employment three months later. *See id*. The Court of Appeals held that the applicable provisions in the agreement, outlined above, conclusively demonstrated that the parties understood that the employment contract would end at the

conclusion of the two-year period unless they agreed upon an extension, which did not happen. *See id*. at 664.

Relying on the *Goldman* case, the *Wood* court reached the same conclusion.  In *Wood* (as in *Goldman*), the employment contract stated that it could not be orally modified.  919 N.Y.S.2d at 185.  The court affirmed the trial court's conclusion that this provision alone demonstrated the parties' intent that any renewal of the plaintiff's employment contract was required to be in writing and, therefore, the application of the common law inference based on the parties' conduct was rebutted as a matter of law.  *See id*.  For this reason, the court affirmed the order granting the defendant employer's motion to dismiss.

Like the circumstances presented in the *Goldman* and *Wood* cases, the parties here expressly agreed that their Employment Agreement would expire at the end of 2010, and that any renewal was required to be in writing.  Indeed, the Offer Letter (which Andrews asserts Huntsman adopted through the end of 2010) states that "[n]o individual is authorized to agree to any other employment arrangement ***except by a written document*** . . . ."  (Offer Letter at 2 (emphasis added).)  Moreover, as established by the Second Amended Complaint, both parties clearly understood that the agreement would ***not renew automatically*** and that they would be required to negotiate a new agreement.  This is made perfectly clear by (1) David Huntsman's April 19, 2010 email to Andrews, stating that Huntsman would honor the "elements of [Andrews'] existing employment contract with SIR[I] ***going forward through the end of 2010***" (emphasis added), and (2) Andrews' reply email, in which he agreed, and stated:  "I am comfortable with your . . . assurance for the time being ***until such time as we are able to discuss the specifics of my role after 2010***" (emphasis added).

In sum, Andrews' "renewal" argument is simply a red herring designed to avoid the

15

undisputed fact that the Employment Agreement expired at the end of 2010, by its express terms. Thereafter, there was no signed writing, *as required by the Employment Agreement*, to modify its terms to extend it beyond 2010; and Andrews admits that he was awaiting negotiation on a new employment agreement.  What is more, the Second Amended Complaint fails to assert any facts that illustrate the course of dealings or the nature of the consideration or suggest that a meeting of the minds to "renew" the Employment Agreement was indicated by some intelligible conduct, act, or sign.  As a result, Andrews has not stated a "claim to relief that is plausible on its face," *Bell Atl. Corp.*, 550 U.S. at 547, and his implied contract claim (Count V) must be dismissed.

### C.    Andrews' Claim for Bonus Compensation Under the Employment Agreement (Count II) Should Be Dismissed.

Andrews next asserts that Huntsman breached the Employment Agreement by failing to pay him a bonus of $90,155 based on the proceeds from the Pendings.  (*See* Second Am. Compl. ¶¶ 27-31, 41, 42 (clarifying that the bonus sought was calculated based on the Pendings).)  An employee's entitlement to a bonus is governed by the terms of the applicable bonus plan, here the Employment Agreement.  Andrews' claim, however, is defeated by the plain language of the Employment Agreement.

According to Andrews' Second Amended Complaint, the bonus plan set forth in the Employment Agreement provides:

> [Y]our incentive bonus will be calculated as 9% of the current year's ***pre-tax profit*** of the Jackson Hole Brokerage Office, up to the pre-tax profit of the Jackson Hole Brokerage office earned in the prior calendar year, plus 20% of the current year's ***pre-tax profit*** of the Jackson Hole Brokerage Office that exceeds the pre-tax profit earned the prior year. . . .

(Offer Letter at 1 (emphasis added); *see also* Second Am. Compl. ¶ 7.)  The parties agreed that Huntsman would abide by this bonus plan "***going forward through the end of 2010***."  (Email from David Huntsman to Andrews (Apr. 19, 2010) (emphasis added).)  Thus the parties agreed

that Andrews' bonus would be a percentage of the ***pre-tax profit*** of certain of Huntsman's brokerage offices following the acquisition through the end of 2010.  (*See* Second Am. Compl. ¶ 28.)

Applying the bonus formula to the facts of this case shows very clearly that Andrews is not entitled to any bonus compensation from Huntsman based on the Pendings.  This is because the proceeds from the Pendings did not belong to Huntsman, and did not result in any income or profit to Huntsman, pursuant to the Purchase Agreement.  To the contrary, as ***required*** by the Purchase Agreement, any proceeds or profits from the Pendings were retained by SIRI and ***excluded by the transactions contemplated by the Purchase Agreement***. (*See* Purchase Agreement § 2.)  That Agreement further stated that Huntsman would not be responsible for any liabilities arising out of the Pendings.  (*See id*. § 4).  Conspicuously absent from the Second Amended Complaint is any allegation that there was ***any income or profit to Huntsman from the Pendings in 2010*** (or at any other time).  (*See* Second Am. Compl., Counts II and IV (omitting any such allegation).)  Tellingly, Andrews alleges that SIRI, ***not Huntsman***, received the "monies derived from the [Pendings]."  (*Id*. ¶ 41.)

In sum, Andrews is not entitled to any bonus compensation from ***Huntsman*** based on the Pendings.  This is because Huntsman did not receive ***any*** of the proceeds from the Pendings and did not realize ***any*** profit from the Pendings.  SIRI received all such proceeds and profits.  This is confirmed by the Purchase Agreement and the Second Amended Complaint.  Simply put, 9% (or 20%) of zero is zero.  Thus Andrews' claim that Huntsman somehow breached the Employment Agreement by failing to pay him bonus compensation (Count II) is not "plausible on its face," *Bell Atl. Corp.*, 550 U.S. at 547, and must be dismissed.

17

**D.      Andrews' Claim for Violation of the New York Labor Law (Count III) Should Be Dismissed.**

Count III of the Second Amended Complaint alleges that Huntsman failed to pay Andrews the bonus compensation discussed above, and its failure to do so constitutes a violation of Sections 193 and 198 of the New York Labor Law (the "Labor Law").  This claim fails for the same reasons discussed in Section C above – namely, Andrews is not entitled to the bonus he seeks.  However, even if the Court were to determine that Andrews' claim for bonus compensation under the Employment Agreement survives the instant motion to dismiss, Andrews' claim under the Labor Law still fails as a matter of law for three reasons:  (1) Andrews did not perform any work in New York, (2) Andrews worked in an executive capacity, and (3) the bonus Andrews seeks is not wages.  For each of these reasons, discussed immediately below, Andrews' claim against Huntsman for violation of the Labor Law must be dismissed.

*First*, it is axiomatic that the Labor Law is designed to protect those who live and work in New York.  *See generally McKay v. Stewart*, 313 N.Y.S.2d 545, 547 (N.Y. App. Div. 1970) (purpose of Labor Law is to protect rights of residents of this state to wages), *rev'd on other grounds*, 272 N.E.2d 887 (N.Y. 1971).  Here, with regard to his employment with Huntsman, Andrews did not carry out ***any job duties or responsibilities in New York*** – his base of operations was not in New York, his source of direction or control was not in New York, and he did not reside in New York.  To the contrary, Andrews carried out all of his job responsibilities ***entirely*** within the state of Wyoming (and possibly Idaho), where he was physically present and where he and Huntsman maintained an office.  Huntsman has no presence in New York.  Simply put, because Andrews did not work in New York, he is not covered by the Labor Law.

*Second*, the Second Amended Complaint alleges that Andrews worked in an executive capacity (*see* Second Am. Compl. ¶¶ 10, 17, 18) and therefore he is unable to articulate any basis

for relief under the Labor Law.  Andrews does not include any factual allegations in the Second Amended Complaint from which the Court could infer the contrary.  A comparable situation was addressed in *Malinowski v. Wall Street Source, Inc.*, No. 09 Civ. 9592, 2012 U.S. Dist. LEXIS 11575 (S.D.N.Y. Jan. 31, 2012), in which the plaintiff, a former executive, sought recovery of bonuses and salary under the Labor Law.  The Court noted that the plaintiff, like Andrews, was an executive whose weekly earnings exceeded $900.  According to the Employment Agreement, Andrews was to earn $200,000 annually, which is significantly more than $900 per week.  The Court considered Sections 191, 193, and 198 of the Labor Law, and rejected claims under each one, noting that it is "firmly established that § 191 is inapplicable to executives."  *Id.* at *3.

*Finally*, even if Andrews were covered by the Labor Law (which he is not), the definition of "wages" under Section 190(1) does not include a formula-based bonus under an incentive compensation plan that depends upon the performance of the business or other factors outside the employee's personal control.  *Levion v. Société Générale*, 822 F. Supp. 2d 390, 403-04 (S.D.N.Y. 2011); *see also Truelove v. Ne. Capital & Advisory, Inc.*, 738 N.E.2d 770 (N.Y. 2000) (where bonus payment does not hinge on plaintiff's own personal productivity but depends on employer's financial success, it falls outside statutory definition of wages).  Thus, to qualify as "wages," the bonus must be "earnings of an employee for labor or services rendered," Section 190(1), *i.e.,* it must be based on the ***employee's*** efforts or productivity and not on that of others. Consequently, the bonus Andrews seeks to recover does not qualify as wages under the Labor Law.

In sum, Andrews is not covered by the Labor Law and his claim for violation of the statute must be dismissed, even if the Court were to conclude that Andrews' claim for bonus compensation under the Employment Agreement survives the instant motion to dismiss.

**E.      Andrews' Implied-in-Fact Contract Claim (Count IV) Should Be Dismissed.**

Count IV of Andrews' Second Amended Complaint alleges that because he helped close the Pendings as an employee of Huntsman, and because Huntsman was allegedly thereby benefitted, "an implied in fact contract arose" entitling him to compensation for his employment services.  (Second Am. Compl. ¶ 40.)  However, "[i]t is an elementary principle of contract law that, where there exists an express contract for compensation, an action outside that contract will not lie."  *Stissi v. Interstate & Ocean Transp. Co. of Phila.*, 814 F.2d 848, 851 (2d Cir. 1987).

Numerous courts applying New York law have dismissed implied-in-fact contract claims, under similar facts, based on this well-established rule.  *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009) (dismissing employee's implied-in-fact contract claim where there existed express agreement governing same subject matter); *Fed. Ins. Co. v. Distinguished Props. Umbrella Managers Inc.*, 721 F. Supp. 2d 293, 302 (S.D.N.Y 2010) (dismissing implied-in-fact contract claim *on Rule 12(b)(6) motion* and stating:  "In addition, Chubb's claim for breach is precluded by the Insurance Policy, which is an express contract that covers the same subject as the alleged implied-in-fact contract."); *Julien J. Studley, Inc. v. N.Y. News*, 512 N.E.2d 300 (N.Y. 1987) (dismissing real estate broker's action against property sellers to recover brokerage commission because there was express contract on subject matter involved); *Peter Lampack Agency, Inc. v. Grimes*, 939 N.Y.S.2d 409, 410 (N.Y. App. Div. 2012) (dismissing implied-in-fact contract claim *on Rule 12(b)(6) motion* and stating:  "The proposed amended complaint fails to state a cause of action for breach of an implied-in-fact contract because there exists an express contract covering the same subject matter[.]").

Here, although Andrews alleges that an implied-in-fact contract existed between the parties entitling him to compensation for his employment services, he also alleges that an express contract existed *governing the same subject matter*.  (*See* Second Am. Compl., Count II.)

Indeed, Andrews alleges that the Employment Agreement governs the bonus compensation he was entitled to receive as an employee of Huntsman. (*See id.*)  Therefore, Andrews' implied-in-fact contract claim must fail as a matter of law, in the face of the Employment Agreement.[8]

### F.   Andrews' Promissory Estoppel, Unjust Enrichment, and Quantum Meruit Claims (Counts VII and VIII) Should Be Dismissed.

Andrews also asserts that he is entitled to the severance and bonus compensation discussed above under the following quasi-contractual theories: quantum meruit, unjust enrichment, and promissory estoppel (Counts VII and VIII).  "Under New York law, [such claims] are all considered quasi-contract claims," *Harrison v. Toptani Law Offices*, No. 11 Civ. 6801 (LTS), 2012 U.S. Dist. LEXIS 28720, at *4 (S.D.N.Y. Mar. 2, 2012), and should be analyzed together "as a single quasi contract claim," *Tel. Mgmt. Corp. v. Barclays Servs. Corp.*, No. 11 Civ. 8570, 2013 U.S. Dist. LEXIS 48512, at *15 (S.D.N.Y. Mar. 28, 2013) (internal quotation marks and citation omitted).  Importantly, "New York law does not permit recovery in [quasi contract] . . . if the parties have a valid, enforceable contract that governs the same subject matter as the [quasi contract] claim."  *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005).

The *Harrison* case is instructive on this point.  In *Harrison*, a consultant asserted a breach of contract claim, alleging that the defendant breached the agreement by failing to pay him for his services.  *See* 2012 U.S. Dist. LEXIS 28720, at *4.  Like Andrews here, the plaintiff also asserted claims for quantum meruit, unjust enrichment, and promissory estoppel, based on the

---

[8] Putting aside the fact that where there exists an express contract for bonus compensation an action outside that contract will not lie, Andrews' unsupported allegation that Huntsman was benefitted by his work to close the Pendings is contradicted by the Purchase Agreement, which clearly provides that all of the proceeds and all of the profits from the Pendings were retained by SIRI and excluded by the transactions contemplated by the Purchase Agreement.  (*See* Purchase Agreement § 2.)

same set of facts.  *See id.*  The plaintiff's breach of contract claim and quasi-contract claims all arose from the defendants' failures to pay consulting fees that the plaintiff billed to them and the bonus to which he claimed he was entitled pursuant to the written agreement.  *See id.* at *5-*6. The court held that while the plaintiff speculated that there may be disputes as to the written contract, that did not put in question the nature of his claim as one in contract.  *See id.* at *6. Rather, it simply indicated that issues as to interpretation of ambiguous provisions may arise in the course of the litigation.  *See id.*  Thus the court dismissed the quasi-contract claims on the defendants' Rule 12(b)(6) motion to dismiss.  *See id.* at *7.

Other New York courts have reached the same result.  *See Verus Pharms., Inc. v. AstraZeneca AB*, No. 09 Civ. 5660, 2010 U.S. Dist. LEXIS 83571, at *37 (S.D.N.Y. Aug. 16, 2010) (granting defendant's Rule 12(b)(6) motion to dismiss plaintiff's unjust enrichment claim where plaintiff's breach of contract claim and unjust enrichment claim were "based on the same facts"); *Firtell*, 2007 N.Y. Misc. LEXIS 6426, at *5 ("[E]ach of [plaintiff's quasi contract] claims is based upon plaintiff's alleged entitlement to receive compensation . . . from defendants for the job duties . . . she performed on defendants' behalf, and it is undisputed that there are valid and enforceable written agreements which govern the amount of the compensation that [defendants] w[ere] obligated to pay plaintiff for the performance of her job duties . . . . Accordingly, the second and third causes of action are dismissed, because the existence of a valid and enforceable written agreement governing a particular subject matter precludes a plaintiff's recovery for quasi-contractual claims arising out of the same subject matter[.]")

Andrews' quasi-contractual theories here fare no better.  Each of these claims is based upon Andrews' alleged entitlement to receive severance and bonus compensation for the job duties he performed for Huntsman, but like the plaintiff in the *Harrison* case, Andrews also

alleges that there are valid and enforceable agreements which govern the amount of compensation Huntsman is obligated to pay him for the performance of his job duties. Andrews cannot avoid the fact that his quasi-contract claims arise out of the same set of facts as his contract claims.[9]  Thus the Court must dismiss Andrews' quasi-contract claims.

**G.     Andrews' Claims for Attorneys' Fees Should Be Dismissed.**

Under New York law, which follows the "American Rule," "attorneys' fees are not ordinarily a recoverable element of damages, in the absence of a ***statute*** or ***enforceable contract*** providing therefor." *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, No. 10-CV-1762, 2013 U.S. Dist. LEXIS 62007, at *30 (E.D.N.Y. Apr. 30, 2013) (emphasis added, internal quotation marks and citation omitted).  "Courts should not infer a party's intention to provide fees as damages because attorneys' fees provisions run against the grain of the accepted policy that parties are responsible for their own attorneys' fees." *Id.* at *30-*31 (internal quotation marks and citation omitted); *see also Duracell, Inc. v. Tri Star Fabricating, Inc*., No. 89 Civ. 1492, 1990 U.S. Dist. LEXIS 303, at *9 (S.D.N.Y. Jan 10, 1990) (dismissing claim for attorneys' fees on Rule 12(b)(6) motion because plaintiff "failed to offer any authority for the request"); *Atlas Realty of E. Meadow, Inc. v. Ostrofsky*, 289 N.Y.S.2d 784, 789 (N.Y. Sup. Ct. 1967) (denying attorneys' fees where contract did "not provide for the recovery of . . . fees").

Here, Andrews is not entitled to recover his attorneys' fees under any of the contracts or statutes cited in his Second Amended Complaint.  *First*, Andrews asserts that he is entitled to recover attorneys' fees under the Employment Agreement, but the Employment Agreement does not provide a right to recover attorneys' fees.  (*See* Offer Letter (Ex. A).)

---

[9] Further, with regard to Andrews' claim for promissory estoppel, the promise alleged – to pay certain bonus compensation – is not a legal duty independent of the written agreement but arises out of the agreement itself.

*Second*, Andrews asserts that he is entitled to recover attorneys' fees under the Purchase Agreement, but, even if Andrews is considered to be a third-party beneficiary of the Purchase Agreement (which he is not), the Purchase Agreement (like the Employment Agreement) does not provide a right to recover attorneys' fees. (*See* Purchase Agreement (Ex. B).)

*Finally*, Andrews asserts that he is entitled to recover attorneys' fees under Labor Law § 198. However, as discussed in Section D above, Andrews is not covered by the Labor Law because (1) he did not work in New York, (2) the Labor Law is inapplicable to employees working in an executive capacity, and (3) the bonus Andrews seeks is not wages within the meaning of the Labor Law. The Labor Law provides for liquidated damages and attorneys' fees only where a plaintiff is able to prove a substantive violation thereof. *See Moras v. Marco Polo Network, Inc.*, No. 11 Civ. 2081, 2012 U.S. Dist. LEXIS 181110, at *30 (S.D.N.Y. Dec. 20, 2012); *Pachter v. Bernard Hodes Grp., Inc.*, 891 N.E.2d 279 (N.Y. 2008) (attorneys' fees available only to those who prove substantive violation of Labor Law).

In sum, because Andrews is not entitled to recover his attorneys' fees under any of the contracts or statutes cited in his Second Amended Complaint, his claims for attorneys' fees must be dismissed as a matter of law.

## V.     CONCLUSION

For the reasons stated herein, Huntsman's Motion to Dismiss should be granted and Andrews' claims against Huntsman should be dismissed with prejudice.

Respectfully submitted this 17th day of May, 2013.

/s/ Devora L. Lindeman
Devora L. Lindeman, Esq. (DL - 4631)
GREENWALD DOHERTY LLP
30 Ramland Road, Suite 201
Orangeburg, NY 10962
Telephone: (212) 644-1310
Facsimile: (845) 638-2707
dl@greenwaldllp.com

Justin B. Palmer (admitted *pro hac vice*)
STOEL RIVES LLP
201 S Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 578-6944
Facsimile: (801) 578-6999
jbpalmer@stoel.com