UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
CLAYTON ANDREWS,                                            :
:
                              Plaintiff,    :
:
                 -v-                                  :
:
SOTHEBY INTERNATIONAL                                       :
REALTY, INC., and HUNTSMAN                                  :
FINANCIAL CONSULTING, LC,                                   :
:
                              Defendants.   :
:
------------------------------------------------------------X

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/18/14

No. 12 Civ. 8824 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    After being terminated from his position as Managing Broker at Huntsman Financial Consulting, LC ("Huntsman"), Plaintiff Clayton Andrews brought this employment action against former employers Huntsman and Sotheby's International Realty, Inc. ("SIR"). Plaintiff asserts contract and quasi-contract claims against both Defendants and a claim under New York Labor Law against Defendant Huntsman. Both Defendants have moved to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

    For the reasons set forth below, SIR's motion is granted. Huntsman's motion is granted in part and denied in part.

## BACKGROUND

    Andrews alleges the following facts in his Second Amended Complaint, which are assumed to be true for purposes of deciding this motion. See, e.g., LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 475 (2d Cir. 2009).

*The Employment Agreement*

On or about November 3, 2003, Andrews accepted an offer to join SIR as Senior Vice President of the company's Jackson Hole Brokerage Offices ("Offices") located in Jackson, Teton County, Wyoming and Teton County, Idaho. (Second Am. Compl. ¶ 7, Ex. A.) Andrews describes his position as "Managing Broker" of the Offices. (Id. ¶¶ 10, 18, 20.) Under the terms of the offer of employment ("Employment Agreement"), Andrews was to be paid a base salary (that started at $175,000 and was $200,000 in 2010) semi-monthly. (Id. ¶ 23, Ex. A.) Andrews was eligible to participate in SIR's welfare plans, which he alleges included a severance plan under which he was entitled to severance pay (calculated at $259,781.51 in 2010) "unless he was offered a position with another employer with comparable pay and benefits." (Id. ¶ 11.) Andrews was also eligible to participate in a "non-discretionary Bonus Plan" under which, beginning in 2005, his bonus was calculated "as 9% of the current year's pre-tax profit of the Jackson Hole Brokerage Office, up to the pre-tax profit of the Jackson Hole Brokerage office [sic] earned in the prior calendar year, plus 20% of the current year's pre-tax profit of the Jackson Hole Brokerage Office that exceed[ed] the pre-tax profit earned the prior year." (Id. ¶ 7, Ex. A.) The Employment Agreement further provided that in order to receive his "Incentive Bonus each fiscal year," Andrews had to "be employed by SIR on the last day of such fiscal year," which, pursuant to the Employment Agreement and the parties' representations, was the calendar year. (Id. ¶ 19, Ex. A; Memorandum of Law in Opposition to Defendant Huntsman Financial Consulting, LC's Motion to Dismiss ("Opp'n") 13.) "In light of his role as Managing Broker and in consideration of the bonus payments" Andrews explains that he "acted as a non-selling broker. . . and referred all real estate inquires, except family and a group of excluded clients, to other agents in the office who were then paid a commission on all transactions." (Second Am. Compl. ¶ 10.)

2

*The Notice and Non-Compete Agreement*

As a contingency of his employment offer with SIR, Andrews executed a "Notice and Non-Compete Agreement." (Id. ¶ 8, Ex. B.) Among the other provisions of the Agreement, "the Corporation," defined as "Sotheby's Holdings, Inc. or one of its subsidiaries and affiliates," agreed not to terminate Andrews' "employment relationship" with it "other than for cause or disability without first giving [Andrews] at least six (6) months' prior written notice of the effective date of [his] termination." (Id. Ex. B.) Andrews also agreed not to compete with the Corporation during and for specified periods following his employment. Under both the Employment Agreement and Notice and Non-Compete Agreement, Andrews' employment was at will, subject only to the six-month notice requirement. (Id. Exs. A, B.)

*Sale of the Brokerage Offices*

On or about April 8, 2010, SIR informed Andrews that it was "selling the brokerage offices to Huntsman" and "advised [Andrews] that he would need to talk with the owners or managers of Huntsman about further employment after the date of sale," set for May 7, 2010. (Id. ¶ 12.) The sale was executed through an Asset Purchase Agreement ("APA") between SIR and Huntsman on May 6, 2010. (Affidavit of David Huntsman in Support of Defendant Huntsman Financial Consulting, LC's Motion to Dismiss ("Huntsman Aff.") Ex. C.) At the close of the asset sale, "SIR paid [Andrews] a bonus based upon the closed transaction[s] as of the [closing date]." (Second Am. Compl. ¶ 19.) Other transactions remained pending. (Id. ¶¶ 39, 63.)

*Andrews' Employment at Huntsman*

On April 16, 2010, Andrews emailed David Huntsman, president of Huntsman Financial, a copy of his "2003 employment agreement with SIR" and "asked for written assurance that his agreement with the new entity would be comparable to or better than his existing contract,

3

including his current salary, benefits, and bonus." (Id. ¶ 13; Huntsman Aff. Ex. D.) The email reads:

> I have attached a copy of my original employment contract with SIR. I am happy to finalize the agreement with you when we meet next week, but I would like written assurance prior to my meeting with the former partners on Monday that my agreement with the new entity will be comparable to or better than my existing contract, including but not limited to salary (currently $200k), benefits (medical, 401k, vacation), bonus (9% + 20% pre-royalty and allocations), and the non-compete (6 months). In addition, I would like to know my title and who my direct report will be. I look forward to working with you and your family and continuing to build upon the success of the Jackson Hole and Idaho offices. If you have any questions, please feel free to contact me. Otherwise, please confirm via email your understanding of my employment contract.

(Huntsman Aff. Ex. D.) Huntsman replied on April 19th, writing, "I appreciate your availability earlier this morning to discuss this matter in more detail over the phone. I want to confirm to you in writing to add to my verbal assurance that upon closing of this transaction we will honor and abide by the conditions and elements of your existing employment contract with SIR going forward though [sic] the end of 2010." (Id.) To this, Andrews replied, "as I stated on our call I am comfortable with your verbal and written assurance for the time being until such time as we are able to discuss the specifics of my role after 2010." (Id.)

Following the close of the asset sale, Huntsman "repeatedly assured employees . . . that their compensation and all other terms and conditions of their employment would remain the same as it had been under SIR." (Second Am. Compl. ¶ 16.) "In reliance upon the express agreement by Huntsman to honor [Andrews'] prior contract and the subsequent representations made by Huntsman . . . and in anticipation of receipt of a year-end bonus, [Andrews] continued to act as a non-selling broker and referred listings and sales to other office agents." (Id. ¶ 17.) As part of his continued employment, Andrews closed "numerous" transactions that were still pending as of the date of the asset sale. (Id. ¶¶ 39, 63.) By the end of 2010, Andrews claims to have "earned an additional bonus of $90,155.00." (Id. ¶ 19.) Andrews "requested that

4

Huntsman pay him his bonus in accordance with the Employment Agreement," but Huntsman failed to do so despite his "repeated demands." (Id.)  On or about May 7, 2011, Huntsman informed Andrews that it would be replacing him as Managing Broker, and on June 6, 2011, terminated his employment. (Id. ¶ 20.)

## PROCEDURAL HISTORY

Andrews filed a Complaint against SIR and Huntsman on December 5, 2012 and an eight count Second Amended Complaint (the "Complaint") on April 19, 2013.[1]  After both Defendants moved to dismiss, the Court heard argument on November 18, 2013.

## STANDARD OF REVIEW

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The factual matter is sufficient if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 429 (2d Cir. 2012).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678.

In addition to the allegations in the Complaint, the Court may consider "documents attached to the complaint as an exhibit or incorporated in it by reference, [ ] matters of which judicial notice may be taken, or [ ] documents either in plaintiffs' possession or of which

---

[1] The Court notes that, for each claim, Andrews requests attorney's fees and costs associated with bringing this lawsuit.  "These requests are not claims upon which relief may be granted; rather, they are potential forms of relief." Jaffe v. Capital One Bank, 09 Civ. 4106 (PGG), 2010 WL 691639, at *10 (S.D.N.Y. Mar. 1, 2010).  The Court therefore does not address the issue at this time.

5

plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).

For purposes of ruling on these motions, the Court considers the Employment Agreement and Notice and Non-Compete Agreement, which are attached as exhibits to the Complaint. (Second Am. Compl. Exs. A, B.) The Court also considers the April 2010 email correspondence between Andrews and Huntsman and a redacted copy of the APA between SIR and Huntsman. (Huntsman Aff. Exs. C, D.) None of the parties dispute the authenticity of these documents nor that they should be considered on these motions. (See Tr. 23:16-21; Memorandum of Law in Support of Defendant Huntsman Financial Consulting, LC's Motion to Dismiss ("Mem.") 4 n.3, 5 n.4, 8 n.6; Reply Memorandum of Law in Support of Defendant Sotheby's International Realty, Inc.'s Motion to Dismiss ("Reply.") 4-5.)

## DISCUSSION

### A. Applicable Law

As subject-matter jurisdiction in this case is premised on diversity of citizenship, the Court must determine which state's law applies to Plaintiff's claims. "As a general matter, a district court sitting in diversity jurisdiction applies the choice-of-law rules of the state in which it sits." Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp., 05 Civ. 9640 (PKL), 2009 WL 935665, at *9 (S.D.N.Y. Apr. 7, 2009). Therefore, the Court applies New York choice-of-law rules to determine which state's substantive law will govern Andrews' claims.

New York courts recognize that "in the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied," Walter E. Heller

& Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir. 1984), and where the "parties' briefs assume that New York law controls, . . . such implied consent . . . is sufficient to establish choice of law," Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) (internal quotation marks omitted); see also Hannex Corp. v. GMI, Inc., 140 F.3d 194, 203 n.7 (2d Cir.1998) ("The parties seem to agree, as both argue New York law in their briefs, that New York law, the law of the forum state, governs [the] claims. As such, New York law is properly applied to these claims.").

Additionally, the Notice and Non-Compete Agreement contains the following choice-of-law and forum selection clause:

> This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York, and you consent to the jurisdiction of the state and federal courts situated in New York City for the purpose of adjudicating any dispute relating to this Agreement. Any and all disputes related to this Agreement will be adjudicated in state or federal court in Manhattan. Any waiver or amendment of any provision of this Agreement shall be in writing and signed by both parties.

(Second Am. Compl. Ex. B.)  In light of the foregoing clause as well as the parties' reliance on New York law in their submissions, the Court will apply the law of the State of New York.[2]

### B. Breach of Express Contracts

To establish a claim for breach of contract under New York law, a party must prove the existence of a contract, performance of the contract by one party, breach by the other party, and damages.  Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994).

**1. Breach of Contract by SIR (Count I)**

As damages for SIR's alleged failure to provide him with six months' written notice of the termination of his employment, Andrews asserts that he is entitled to six months' pay

---

[2] In spite of its reliance on New York law, Defendant Huntsman contests the applicability of New York Labor Law to Andrews' compensation claim in Count III.

($100,000 based on his $200,000 base pay) plus the value of his benefits and interest thereon, and his lost bonus, which Huntsman failed to pay. (Second Am. Compl. ¶¶ 23-25.) SIR maintains that Andrews has failed to state a cause of action for breach of contract because (1) Andrews' employment was transferred, not terminated; (2) Andrews did not experience a "departure" of his employment; (3) Andrews accepted employment with Huntsman before his employment with SIR was terminated; and (4) "Andrews has failed to allege any actual damages." (Memorandum of Law in Support of Defendant Sotheby's International Realty, Inc.'s Motion to Dismiss ("Mem.") 8-11.) Because the Court concludes that Andrews has indeed failed to sufficiently allege damages, it need not address SIR's other arguments.

New York courts have held that "[i]f the employer has the unconditional right to terminate the contract of employment after a certain notice, discharge has the effect of notice to terminate and damages are allowed only up to the time the contract would have terminated if notice had been given." Bitterman v. Gluck, 9 N.Y.S.2d 1007, 1008 (1st Dep't 1939). "In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint . . . ." Gordon v. Dino De Laurentiis Corp., 529 N.Y.S.2d 777, 779 (1st Dep't 1988).

In this regard, Andrews alleges no facts from which the Court could reasonably infer that he received anything less than the compensation he would have received under his contract with SIR. Indeed, Andrews concedes that Huntsman continued his employment on the same terms as his employment with SIR until he was terminated on June 6, 2011, over a year after his purported termination by SIR.[3] (Second Am. Compl. ¶¶ 17, 20.) Irrespective of whether Andrews was entitled to a year-end bonus from Huntsman, he was not entitled to one from SIR

---

[3] The APA required Huntsman to offer employment to the Offices' employees and to pay "severance benefits equal to those which the employee would have received under" SIR's severance plan if it terminated them under certain circumstances within one year of the asset sale. (Huntsman Aff. Ex. C § 7(b), (f)(i).)

8

under the express terms of his Employment Agreement, which required him to be employed by SIR at the end of the fiscal year as a precondition of receiving his bonus. SIR informed Andrews that it was selling the brokerage offices to Huntsman in early April 2010; Andrews emailed David Huntsman to discuss further employment on April 16, 2010; and the asset sale closed on May 7, 2010. Even assuming notice should have been provided as of the close of the asset sale on May 7, 2010, Andrews would have been terminated in November 2010, over a month shy of the end of SIR's fiscal year on December 31, 2010, and thus no bonus was due to Andrews from SIR. Indeed, Andrews himself describes the bonus paid to him by SIR upon the close of the asset sale as "gratuitous" and the $90,155.00 unpaid bonus as "consequential damages." (Memorandum of Law in Opposition to Defendant Sotheby's International Realty, Inc.'s Motion to Dismiss ("Opp'n") 10, 15 n.6.)

Andrews' additional arguments that "[t]here were other opportunities that had he had the notice he could have explored and maybe they would have resulted in more," (Tr. 27:23-25), and that if he "had more time . . . he could have pinned Mr. Huntsman down on" the bonus, (Tr. 29:11-13), are speculative and insufficient to sustain his claim. See Boccardi Capital Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C., 05 Civ. 6882 (GBD), 2009 WL 362118, at *6 (S.D.N.Y. Feb. 9, 2009) ("Plaintiff's speculative optimism, concerning what 'could have and would have' happened, cannot substitute for facts evincing direct causation and actual damages."). Andrews' further contention that had he received proper notice he "could have kept referrals on listings during that notice period that could have generated a direct sales commission to him, rather than referring those out to other salesman in the Offices" also fails. (Opp'n 9.) Not only is this allegation outside of and not reasonably inferable from the facts alleged in the Complaint, it is inconsistent with them, as Andrews explicitly alleges that he agreed not to sell on commission as part of his employment. (Second Am. Compl. ¶ 10.) While a Court is

required to give a plaintiff the benefit of all reasonable inferences, it need not speculate as to the damages Andrews could have conceivably suffered.  See Twombly, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

Accordingly, SIR's motion to dismiss is granted with respect to Count I.

### 2. Breach by Huntsman (Count II)

In Count II, Andrews alleges that Huntsman breached its agreement with him by failing to pay him the bonus due under his Employment Agreement with SIR, which it adopted.  The Court agrees that Andrews has alleged a sufficient factual basis to support a claim for relief.  In response to Andrews' request for "assurance . . . that . . . [his] agreement with the new entity [would] be comparable to or better than [his] existing contract, including, but not limited to salary (currently $200k), benefits (medical, 401k, vacation), bonus (9% + 20% pre-royalty and allocations), and the non-compete," Huntsman replied that he would "honor and abide by the conditions and elements of [Andrews'] existing employment contract with SIR going forward though (sic) the end of 2010."  (Huntsman Aff. Ex. D.)  Andrews thereafter assented to this assurance.  (Id.)  The parties' dispute over whether Andrews was entitled to a bonus under this agreement presents a factual question that cannot be resolved at this stage of the litigation.

Accordingly, Huntsman's motion to dismiss is denied with respect to Count II.

### C. Breach of New York Labor Law by Huntsman (Count III)

Andrews next claims that the bonus due to him from Huntsman constituted part of his wages as defined by New York Labor Law ("NYLL") § 190(1) and that Huntsman's willful failure to pay these wages violated NYLL §§ 193 and 198.

In support of its motion to dismiss, Huntsman argues that New York Labor Law does not apply extraterritorially to out-of-state employees because Andrews "did not carry out any job

duties or responsibilities in New York" and "Huntsman has no presence in New York." (Mem. 18; Reply Memorandum of Law in Support of Defendant Huntsman Financial Consulting, LC's Motion to Dismiss ("Reply") 14.)   In response, Andrews, relying on the New York choice-of-law provision in the Notice and Non-Compete Agreement, urges that "Huntsman is not at liberty to pick and choose which law applies." (Opp'n 9.)

The parties' allegations raise a number of important legal issues—including whether Andrews' bonus constitutes wages under New York Labor Law[4] and whether New York Labor Law should apply to work performed outside of New York when the parties have agreed to be governed by the laws of the State of New York in a contractual choice-of-law provision[5]—none of which have been adequately briefed by the parties.

Furthermore, at oral argument, counsel for Huntsman argued for the first time that the New York choice-of-law provision in the Notice and Non-Compete Agreement is not applicable because that Agreement governs solely the notice Andrews is due prior to termination and the restrictions on his employment following his departure from SIR, and not his compensation, which is governed by the separate Employment Agreement. (Tr. 14:24-15:7.)   Although the Court is not bound to consider arguments made for the first time at oral argument, see, e.g., In re Monster Worldwide, Inc. Sec. Litig., 251 F.R.D. 132, 137 (S.D.N.Y. 2008) ("[T]his argument

---

[4]   Compare Samuels v. Thomas Crimmins Contracting Co., 91 Civ. 6657 (SS), 1993 WL 36168, at *7 (S.D.N.Y. Feb. 9, 1993) ("[C]ourts appear to conclude that if . . . additional compensation is dependent on a factor outside the employee['s] actual work, then such compensation is not wages but merely incentive or supplemental compensation.") (Sotomayor, J.), with Econn v. Barclays Bank PLC, 07 Civ. 2440 (BSJ), 2010 WL 9008868, at *4 (S.D.N.Y. June 10, 2010) (complaint sufficiently alleged that Associate Director of Distressed Debt Desk's "bonus was directly linked to [her] work . . . and not the overall profitability of the bank or the Desk" where she had alleged that "it was the policy of Barclays management to pay the analysts a percentage of the total Desk profits based on the profits the analyst had generated").

[5]   Compare Levinson v. Primedia Inc., 02 Civ. 2222 (DAB), 2007 WL 2298406, at *12 (S.D.N.Y. Aug. 9, 2007) (upholding claim under New York Labor Law by out-of-state plaintiff where parties agreed that contract would be "governed by the laws of the State of New York"), with Melia v. Zenhire, Inc., 967 N.E.2d 580, 590 (Mass. 2012) (concluding that a "contract's choice of New York law would not govern the [plaintiff's Massachusetts] Wage Act claim").

was raised for the first time at oral argument and so was waived in terms of this motion"), it deems it appropriate to do so in this case.

Accordingly, Huntsman's motion to dismiss is denied with respect to Count III, without prejudice to renew at a later date to be set by the Court.

### D. Breach of Implied-In-Fact Contract by SIR and Huntsman (Count IV)

Andrews also asks the Court to infer the existence of an agreement to compensate him for his continued employment with Huntsman (in the amount equivalent to his lost bonus) based on the fact that the "retention of the monies from the pending transactions [at the time of the asset sale] was deemed a part of the purchase price of the business" and that he was the only one at the Offices at the time who could close the transactions. (Second Am. Compl. ¶¶ 40-41.)

Under well-settled law in New York, "a contract may be implied in fact where inferences may be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct." Ellis v. Provident Life & Accident Ins. Co., 3 F. Supp. 2d 399, 409 (S.D.N.Y. 1998). "A contract cannot be implied in fact where the facts are inconsistent with its existence . . . or where there is an express contract covering the subject-matter involved; or against the intention or understanding of the parties . . . ." Miller v. Schloss, 218 N.Y. 400, 406-07 (1916).

Here, Andrews alleges that, following the asset sale, he continued to work for Huntsman pursuant to the "express agreement by Huntsman to honor [his] prior contract." (Second Am. Compl. ¶ 17.) That Andrews closed the pending real estate transactions pursuant to an express agreement with Huntsman—the existence of which is not in dispute, (see Mem. 8)—bars recovery for the same work under a theory of contract implied in fact. Moreover, beyond alleging that he was the only one who could close the pending transactions and that SIR and Huntsman derived benefit from the closures, Andrews has provided no facts or circumstances

12

from which the Court could reasonably infer the existence of a binding agreement between the parties apart from the explicit agreements otherwise alleged.

Accordingly, SIR and Huntsman's motions to dismiss are granted with respect to Count IV.

### E. Breach of Subsequent Implied-In-Fact Contract by Huntsman (Count V)

Andrews next alleges that when Huntsman terminated him from his position as Managing Broker on June 6, 2011 without six months' notice, Huntsman breached an implied contract that arose after the expiration of the parties' agreement in 2010, "given the subsequent course of dealing between [Andrews and Huntsman] and the failure to negotiate and enter into a new contract." (Second Am. Compl. ¶ 45.) He claims he is due six months' salary as well as severance pay as damages. (Id. ¶¶ 47-48.) In support of its motion to dismiss, Huntsman contends that an implied contract could not arise after the expiration of the 2010 agreement because that agreement expired by its express terms and Andrews was "awaiting negotiation on a new employment agreement." (Mem. 15-16.)

Under New York law, "the parties' conduct after the expiration of [a] written contract, including [one party's] continued rendition of services, [the other's] acceptance of those services and . . . payment . . . in accordance with the terms of the written contract" can establish "a contract implied in fact with substantially the same terms and conditions as embodied in the expired written contract." Watts v. Columbia Artists Mgmt. Inc., 591 N.Y.S.2d 234, 236 (3rd Dep't 1992); see also Martin v. Campanaro, 156 F.2d 127, 129 (2d Cir. 1946) ("When an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old."). Nevertheless, "if the circumstances create an inference that the parties did not intend to continue their relationship on the same terms, then no new contract will be

13

implied." Millenium Expressions, Inc. v. Chauss Mktg., Ltd., 02 Civ. 7545 (JCF), 2007 WL 950070, at *6 (S.D.N.Y. Mar. 30, 2007).

Although Huntsman makes forceful arguments as to why an implied-in-fact contract may not have arisen after the expiration of the parties' agreement in 2010, (see Mem. 13-16; Reply 6-9), the Court must "draw all reasonable inferences in the [P]laintiff's favor" on Huntsman's motion to dismiss. Forest Park Pictures, 683 F.3d at 429. According to the Complaint, Andrews and Huntsman did not negotiate a new agreement after December 2010, but Andrews "continued to work for Huntsman in his role as Managing Broker and Huntsman accepted [his] services." (Second Am. Compl. ¶ 18.) Viewing these allegations in the "light most favorable" to Andrews, see Metrokane, Inc. v. Wine Enthusiast, 185 F. Supp. 2d 321, 324 (S.D.N.Y. 2002), the Court finds that Andrews has plausibly alleged that an implied contract arose following the expiration of the parties' express agreement in 2010.

It is true that David Huntsman's assurance to Andrews that he would "honor and abide by the conditions and elements of [Andrews'] existing contract with SIR going forward though [sic] the end of 2010" and Andrews' response that he was "comfortable with [Huntsman's] verbal and written assurance for the time being until such time as [the parties were] able to discuss the specifics of [Andrews'] role after 2010" suggest an intent to renegotiate the terms of Andrews' continued employment with Huntsman. Nonetheless, the email exchange does not conclusively overcome, at this early stage, the inference that "the parties intended to renew the contract," distinguishing the facts of this case from those cited by Huntsman. See, e.g., Goldman v. White Plains Ctr. for Nursing Care, LLC, 896 N.E.2d 662, 664 (N.Y. 2008) (dismissing claim for breach of implied-in-fact contract where parties' "agreement included a provision requiring [them] to negotiate a renewal . . . before the contract was set to expire" and "specified that its terms would end when a party stated its 'intention not to renew' . . . 'at least six (6) months prior

14

to the end of the Employment Period'"). It would be premature to conclude that Huntsman's email and Andrews' response unequivocally foreclosed renewal after December 2010 absent negotiation of a new agreement.

Accordingly, Huntsman's motion to dismiss is denied with respect to Count V.

**F. Breach of the Duty of Good faith and Fair Dealing by Huntsman (Count VI)**

With respect to Count VI, Andrews alleges that he is a third-party beneficiary of the APA between SIR and Huntsman, under which Huntsman agreed to pay former-SIR employees severance if it terminated them under certain conditions within one year of the close of the asset sale. (Second Am. Compl. ¶ 51; Huntsman Aff. Ex. C.) He further alleges that Huntsman violated the covenant by waiting until after the one-year period had expired to terminate his employment, thereby avoiding its obligation to pay severance. (Second Am Compl. ¶ 53.)

The implied covenant of good faith and fair dealing "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 773 N.E.2d 496, 500 (N.Y. 2002) (internal quotation marks omitted).

The Court agrees with Huntsman that the Complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing by Huntsman. Even assuming that Andrews has standing to assert this claim as a third-party beneficiary, the APA is clear as to Huntsman's obligations with respect to former SIR employees, and Huntsman deprived Andrews of no fruits to which he was entitled under the agreement by waiting until after the expiration of the one-year period to terminate him. See id. Moreover, Huntsman's termination after the one-year mark did not deprive Andrews of any payment he had earned, making his case distinguishable from Arbeeny v. Kennedy Executive Search, Inc, 893 N.Y.S.2d 39, 42 (1st Dep't 2010), where the court held that the plaintiff had "sufficiently stated a breach of contract claim for unpaid earned

commissions that he 'arranged' prior to his termination." See also Berzin v. W.P. Carey & Co., 740 N.Y.S.2d 63, 64 (1st Dep't 2002) (rejecting at-will employee's claim that employer violated the covenant of good faith and fair dealing because its sole motivation in terminating his employment was to prevent stock options and other compensation benefits from vesting, as the "covenant of good faith and fair dealing cannot negate defendant's express right to terminate the . . . agreement without cause at any time").

Accordingly, Huntsman's motion to dismiss is granted with respect to Count VI.

### G. Promissory Estoppel by Huntsman (Count VII)

Andrews next alleges that "Huntsman made clear and unambiguous promises that it would continue to compensate the former SIR employees, including Plaintiff, under the same terms and conditions that they had been employed with SIR." (Second Am. Compl. ¶ 57.) He argues that he is damaged in the amount of his bonus and the severance pay he claims he forfeited by not pursuing a claim against SIR in reliance on Huntsman's representations. (Id. ¶¶ 58, 60.)

Numerous courts have made clear that "New York law does not recognize promissory estoppel in the employment context." Bessemer Trust Co., N.A. v. Branin, 498 F. Supp. 2d 632, 639 (S.D.N.Y. 2007); see, e.g., Ashmore v. CGI Grp. Inc., 11 Civ. 8611 (LBS), 2012 WL 2148899, at *7 (S.D.N.Y. June 12, 2012) (dismissing plaintiff's promissory estoppel claim for defendant's failure to pay bonus verbally promised at time of plaintiff's hire) (citing cases); Fishoff v. Coty Inc., 676 F. Supp. 2d 209, 219 (S.D.N.Y. 2009) ("Under New York law, the failure to switch employers does not create a promissory estoppel claim unless the plaintiff can show that unconscionable injury would result absent enforcement of the defendant's promise." (quoting Oh v. Imagemark, Inc., 06 Civ. 10187 (DLC), 2007 WL 2962381, at *4 (S.D.N.Y. Oct. 10, 2007)); Shapira v. Charles Schwab & Co., Inc., 225 F. Supp. 2d 414, 419 (S.D.N.Y. 2002)

("New York does not apply the doctrine of promissory estoppel in the employment context. A prospective employee . . . cannot sue an employer who reneges on a[n] . . . employment promise on such a theory."). Andrews therefore cannot invoke the doctrine of promissory estoppel to obtain relief here.

Accordingly, Huntsman's motion is granted with respect to Count VII.

### H. Unjust Enrichment and Quantum Meruit by SIR and Huntsman (Count VIII)

Lastly, Andrews brings a claim for unjust enrichment and quantum meruit against SIR and Huntsman. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000). To state a claim for quantum meruit, a plaintiff must allege: (1) the plaintiff rendered services to defendant, (2) the defendant accepted such services, (3) the plaintiff expected reasonable compensation, and (4) the reasonable value of such services. Int'l Customs Assocs., Inc. v. Ford Motor Co., 893 F. Supp. 1251, 1257 (S.D.N.Y. 1995) aff'd, 201 F.3d 431 (2d Cir. 1999). The two doctrines are related, as a claim of quantum meruit is a means of remedying unjust enrichment. See Alter v. Bogoricin, 97 Civ. 0662 (MBM), 1997 WL 691332, at *10 (S.D.N.Y. Nov. 6, 1997). Both doctrines are also quasi-contractual and as such apply only in the absence of an express agreement on the subject-matter. See id.; Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987) ("[T]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."). Moreover, under New York law, courts "may analyze quantum meruit and unjust enrichment together as a single quasi contract claim." Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005).

### 1. Unjust Enrichment and Quantum Meruit by SIR

Andrews claims that he "acted in good faith in continuing to provide brokerage services and facilitating the closing of the pending transactions," benefiting SIR, which retained the commissions from these transactions under the APA. (Second Am. Compl. ¶ 63.) He insists that the general rule prohibiting recovery in quasi-contract when an express agreement governs the subject-matter does not apply to his unjust enrichment claim since he closed these transactions after his contract with SIR expired. (Opp'n 19-20.) This argument is unavailing.

Under well-settled principles of New York law, "[a] person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person." MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 157 F.3d 956, 964 (2d Cir. 1998) (quoting Restatement of Restitution § 110 (1937)).

Here, Andrews closed the pending transactions pursuant to an express agreement with Huntsman. Therefore, Andrews must look to Huntsman for relief. See id. In any event, the facts alleged in the Complaint support neither an inference that Andrews had a reasonable expectation of compensation from SIR nor that he performed any services at SIR's request, as he was at that time an employee of Huntsman. See Wilson v. Dantas, 12 Civ. 3238 (GBD), 2013 WL 92999, at *7 (S.D.N.Y. Jan. 7, 2013) ("The services performed must not have merely benefitted the enriched party, but must have been performed at its behest."); 4 Hour Wireless v. Smith, 01 Civ. 9133 (RO), 2002 WL 31654963, at *2 (S.D.N.Y. Nov. 22, 2002) ("Even [absent] that contract, Calypso's claim would fail. Calypso must demonstrate that it rendered services to AT&T, that AT&T accepted the services, and that Calypso expected to be paid by AT&T."). Therefore, "it cannot be said that principles of equity require any restitution." Leibowitz v. Cornell Univ., 584 F.3d 487, 509 (2d Cir. 2009).

Accordingly, SIR's motion to dismiss is granted with respect to Count VIII.

### 2. Unjust Enrichment and Quantum Meruit by Huntsman

With respect to his unjust enrichment and quantum meruit claim against Huntsman, Andrews alleges that he "continu[ed] to provide brokerage services and facilitat[e] the closing of the pending transactions" with the expectation of compensation in the form of a non-discretionary bonus, which Huntsman failed to pay. (Second Am. Compl. ¶ 63-65.) Huntsman asserts that an express contract covers the subject matter of Andrews' compensation, (Mem. 20), while Andrews maintains that there is a dispute over the subject matter of the parties' agreement since it may not have "fully covered the issue of payment of the 2010 bonus" and "Huntsman has not made any binding admissions that there was an express contract that covered payment of the 2010 bonus," (Opp'n 14).

In New York, a "[p]laintiff may only bring quasi-contract claims in addition to a breach of contract claim where there is a dispute over the existence, scope, or enforceability [of] the putative contract." Harrison v. Toptani Law Offices, 11 Civ. 6801 (LTS), 2012 WL 694755, at *2 (S.D.N.Y. Mar. 2, 2012) (internal quotation marks omitted). "To determine that, as a matter of law, [a contract] provision covers the subject matter at issue . . . [the Court] must find that the language unambiguously covers this subject matter." Gould v. Lightstone Value Plus Real Estate Inv. Trust, Inc., 301 F. App'x. 97, 99 (2d Cir. 2008).

Although the agreement between Andrews and Huntsman is not without ambiguity, it clearly covers the subject of Andrews' compensation, including his bonus. The parties both allege that Andrews' entitlement to a bonus is governed by their agreement, and neither Andrews nor Huntsman has raised an issue of enforceability or validity. (Mem. 8; Opp'n 6.) Rather, the parties dispute whether Andrews was entitled to a bonus under the factual circumstances giving rise to this action, namely where commissions from transactions pending at the time of the asset

19

sale belonged to SIR, and not Huntsman. That dispute does not change the scope of the agreement, which clearly covers the subject of Andrews' bonus compensation. See Aledia v. HSH Nordbank AG, 08 Civ. 4342 (BSJ), 2009 WL 855951, at *3 (S.D.N.Y. Mar. 25, 2009) ("Although Plaintiff's employment agreement with Defendant is ambiguous as to incentive compensation, its subject matter is unambiguous. It addresses the award, vesting, and payment of incentive compensation to Plaintiff.").

Accordingly, Huntsman's motion to dismiss is granted with respect to Count VIII.

## CONCLUSION

Accordingly, Defendant SIR's motion to dismiss is granted in full. Defendant Huntsman's motion is granted as to Counts IV, VI, VII, and VIII and denied as to Counts II, III, and V. The remaining parties are to appear for a conference on February 28, 2014 at 4:00 p.m. in Courtroom 1506 at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York, 10007. Plaintiff's counsel and Defendant Huntsman's Utah counsel may appear telephonically.

The Clerk of Court is respectfully directed to close item numbers twenty (20) and twenty-four (24) on the docket and close the case against Defendant Sotheby's International Realty, Inc.

SO ORDERED.

Dated:   February 18, 2014
         New York, New York

Ronnie Abrams
United States District Judge